IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSE LUGO-VAZQUEZ, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 08-986 (JBS) |
| v. | : | |
| WARDEN GRONDOLSKY & MEDICAL DEPARTMENT FCI FORT DIX, | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Mr. Jose Lugo-Vazquez
28846-069
FCI Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640
    Plaintiff pro se

Karen Helene Shelton, AUSA
OFFICE OF THE U.S. ATTORNEY
402 East State Street
Trenton, NJ 08608
    Attorney for Defendants Warden Grondolsky and Medical
    Department, FCI Fort Dix

**SIMANDLE**, District Judge:

    Plaintiff Jose Lugo-Vazquez is an inmate who is presently

confined at the Federal Correctional Institution in Fort Dix, New

Jersey ("FCI Fort Dix"). He filed this lawsuit pursuant to

Bivens v. Six Unknown Named Agents of Federal Bureau of

Narcotics, 403 U.S. 388 (1971), alleging that Warden Grondolsky

failed to protect him from being attacked by a fellow prisoner

and that the Medical Department at FCI Fort Dix provided him with

inadequate medical care.  Presently before the Court is
Defendants' motion to dismiss Plaintiff's Complaint [Docket Item
8] on the grounds that Plaintiff failed to exhaust administrative
remedies prior to filing this lawsuit, as is required by the
Prison Litigation Reform Act ("PLRA").  In addition, after
Defendants moved to dismiss, Plaintiff filed a series of motions
which raise claims not asserted in the Complaint [Docket Items 11
and 13].  For the reasons set forth herein, the Court will grant
Defendants' motion to dismiss without prejudice to Plaintiff's
right to litigate these matters following proper exhaustion of
administrative remedies, and will dismiss as moot Plaintiff's
motions.

**I.   BACKGROUND**

The facts of this action, taken from the limited number of
allegations contained in the Complaint, are as follows.
Plaintiff, who is confined at FCI Fort Dix, was attacked by an
unspecified fellow inmate on January 13, 2008.  (Compl. ¶ 3-1.)
Plaintiff alleges that the attack took place because "there was
no security to prevent [it,] . . . [b]eing that there is one
correctional officer for . . . [every] three hundred and sixty
inmates."  (Id. at ¶ 3-2.)  Plaintiff alleges that he suffered
"severe damages to the skull and brain" as a result of the
attack.  (Id. at ¶ 3-1.)  Specifically, since the attack,
Plaintiff alleges that he has experienced a seizure, throbbing

2

headaches, and a loss of hearing in one ear, which conditions he alleges the prison's Medical Department has failed to treat satisfactorily.  (Id. at ¶¶ 3-4, 3-6.)

In his Complaint, Plaintiff concedes that he "did not seek administrative remedy in this case[] [d]ue to the [c]onstitutional magnitude of violations by the administration here at Fort Dix."  (Compl. ¶ 3.)  According to Plaintiff,

> [t]he administrative remedy process will not aid in this case.  The Warden Grondolsky, Dodrill the regional director, nor Washington[']s Central office Watts, will not admit through the remedy process that the Plaintiff's constitutional rights were violated.  So therefore the remedy process will not aid the Court.

(Id.)  Although not set forth in Plaintiff's Complaint, Plaintiff states in a Declaration submitted in opposition to Defendants' motion to dismiss that he did not follow the prison's administrative remedy process because he was hospitalized and confined to the Special Housing Unit ("SHU") for almost two months following the attack.[1]  (Lugo-Vazquez Decl. ¶ 8.)

---

[1]   The Court recognizes that when considering a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., it looks only to "the complaint, attached exhibits, and matters of public record."  Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007) (citation omitted).  As the discussion below makes clear, the Court does not rely upon the statements in Plaintiff's Declaration in deciding the matter presently under consideration, because such statements, even if true, would not alter the disposition of the instant motion.  The Court further recognizes that it could, upon notice to the parties, convert Defendants' motion to dismiss into a motion for summary judgment if the contents of Mr. Lugo-Vazquez's Declaration were material to the matters at hand.  See Rule 12(d), Fed. R. Civ. P.  As the Court explains below, such conversion is not called for here; the

After Plaintiff filed his Complaint in this action,
Defendants filed the motion to dismiss [Docket Item 8] presently
under consideration, in which they argue that Plaintiff's
Complaint must be dismissed on account of his failure to exhaust
administrative remedies, as the PLRA requires in all "action[s] .
. . brought with respect to prison conditions . . . by a prisoner
confined in any jail, prison, or other correctional facility."
42 U.S.C. § 1997e(a).  In addition to opposing Defendants'
dismissal motion, Plaintiff has filed a series of motions[2] which
raise claims not asserted in the Complaint, including a claim
that Defendants interfered with his right of access to the courts
[Docket Item 11], and a motion seeking the appointment of a
special master to investigate his allegations that Defendant
Grondolsky has interfered with inmates' pursuit of their
administrative grievances at FCI Fort Dix [Docket Item 13].[3]

_____

contents of Plaintiff's Declaration are referenced for background
only.

    [2]  Plaintiff has also filed a motion seeking the appointment
of pro bono counsel [Docket Item 12].  Because, as the Court
explains below, Plaintiff's failure to exhaust administrative
remedies requires that the Court grant Defendants' motion to
dismiss, his motion seeking the appointment of pro bono counsel
will be dismissed as moot.
    Finally, Plaintiff has filed a motion seeking an enlargement
of time to respond to Defendants' submissions [Docket Item 19].
The Court has considered Plaintiff's untimely submission, and
will thus dismiss as moot his motion for an extension.

    [3]  The nature of the alleged interference with Plaintiff's
access to the court and inmates' administrative grievances is not
clear from Plaintiff's motions, and these matters are not

4

## II.  DISCUSSION

### A.   Standard of Review

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

> While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level."

Phillips, 515 F.3d at 234.  "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'"  Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir.

---

addressed in Plaintiff's Complaint.  As the Court explains below, because the dismissal of all claims asserted in the Complaint is called for here on account of Plaintiff's failure to exhaust administrative remedies, the Court will dismiss these motions, which raise matters peripheral to the allegations in the Complaint and which Plaintiff likewise did not seek to grieve internally.  As with the claims the Court dismisses herein, Plaintiff is free to file a new complaint addressing the concerns raised in his motions upon his exhaustion of all available administrative remedies.

2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, --- U.S. ----, 127 S. Ct. 1955, 1965 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, --- U.S. ----, 127 S. Ct. at 1964-65 (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

> "[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. [<u>Twombly</u>, 127 S. Ct. at 1965 n.3.]  This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  <u>Id.</u>

<u>Phillips</u>, 515 F.3d at 234.  "Generally, in ruling on a motion to dismiss, a district court relies [only] on the complaint, attached exhibits, and matters of public record." <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007) (citation omitted).

**B.   Defendants' Motion to Dismiss**

Defendants argue, and the Court agrees, that Plaintiff's Complaint must be dismissed, because it is clear from the face of the Complaint that Plaintiff has failed to exhaust administrative remedies in accordance with the PLRA.  The Court reviews the relevant provisions of the PLRA and the administrative remedy procedures provided by Bureau of Prisons ("BOP") regulations

6

before addressing the merits of Defendants' motion.

      1.   PLRA Exhaustion and BOP Administrative Remedy
           Procedures

The PLRA provides in relevant part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "As the statutory language makes clear, § 1997e(a) applies equally to § 1983 actions and to Bivens actions."  Nyhuis v. Reno, 204 F.3d 65, 68 (3d Cir. 2000).  The PLRA's exhaustion requirement applies to all inmate suits "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  Under the Act, the exhaustion of all administrative remedies is mandatory, whether or not the inmate believes that such administrative remedies would be effective and even if the available administrative processes cannot grant the desired remedy.  Booth v. Churner, 532 U.S. 731, 739-41 (2001).  Enforcement of the PLRA's exhaustion requirement serves the twin goals of "protect[ing] administrative agency authority . . . . [and] promot[ing] efficiency."  Woodford v. Ngo, 548 U.S. 81, 89 (2006).  The PLRA's exhaustion requirement furthers these goals by providing the "prisoner who does not want to participate in

the prison grievance system" with the "incentive to comply with the system's procedural rules." Id. at 95.

As the Court of Appeals has recognized, because there "is no express federal law describing the procedural requirements with which prisoners must comply in satisfying § 1997e(a)'s exhaustion requirement," the procedures set out in a prison's administrative grievance program serve as the measure for whether an inmate has exhausted his administrative remedies. Spruill v. Gillis, 372 F.3d 218, 231 (3d Cir. 2004). In the case of federal prisoners, the BOP's regulations define the process that a federal inmate must use in "seek[ing] formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). The grievance procedures that a federal prisoner must exhaust prior to filing suit create a multi-stage process, and a prisoner must proceed through each stage in order to satisfy the PLRA's pre-suit exhaustion requirement. See Ghana v. Holland, 226 F.3d 175, 178 (3d Cir. 2000). In brief, the BOP's administrative grievance process requires a prisoner to file an informal complaint with prison staff, to appeal an adverse decision to the prison warden, to appeal from the warden's determination to the BOP's Regional Director, and, finally, to appeal from the Regional Director's decision to the BOP's General Counsel.[4] See id.; see also 28

---

[4] Additionally, the regulations provide an alternative means of grieving certain particularly sensitive matters. The regulations state that "[i]f the inmate reasonably believes the

C.F.R. §§ 542.10, et seq.

In addition, and of particular relevance to this case, while the BOP's regulations prescribe deadlines for the completion of each stage of the grievance process, see 28 C.F.R. §§ 542.14(a), 542.15(a), an inmate is entitled to seek an extension "[w]here [he] demonstrates a valid reason for delay." § 542.14(b).  The regulations explain that "[i]n general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame[, . . . including] an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal." Id.; see also § 542.15(a) (affording extensions to inmates for appeals from adverse decisions of prison wardens and noting that "[v]alid reasons for delay include those situations described in § 542.14(b) of this part").

2.   Application to this Case

In view of Plaintiff's acknowledgment on the face of his Complaint that he elected not to file an administrative grievance form "[d]ue to the [c]onstitutional magnitude of violations by the administration here at Fort Dix," and because he believed

---

issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director," and set forth the procedure for inmates to follow in grieving such sensitive matters.  28 C.F.R. § 542.14(d)(1).

that Defendants would not "admit through the remedy process that
the Plaintiff's constitutional rights were violated," (Compl. ¶
3), the Court agrees with Defendants that the Complaint must be
dismissed in order to afford Plaintiff the opportunity to grieve
this matter internally.  The law is clear that "the PLRA
exhaustion requirement requires proper exhaustion," whether or
not the inmate believes that the remedial process will afford him
the relief he seeks.  Ngo, 548 U.S. at 93, 95 (noting as well
that "[t]he benefits of exhaustion can be realized only if the
prison grievance system is given a fair opportunity to consider
the grievance").  Plaintiff was not permitted to ignore the
PLRA's exhaustion requirements simply because of the importance
of the issues he seeks to litigate or because of his skepticism
over the reaction he imagines that the BOP would have had to his
complaints.[5]  See Brown v. Croak, 312 F.3d 109, 112 (3d Cir.
2002) (explaining that the "exhaustion provision of the PRLA is a
bright-line rule" and that there "is no futility exception to the
PRLA").

Nor is the Court persuaded by Plaintiff's argument that he
should be permitted to bypass the grievance process because,

_____

[5]  As the Court indicated in Note 4, supra, if Plaintiff was
concerned that his safety would be jeopardized by filing a
grievance with Defendant Grandolsky, BOP regulations afford an
alternative means to grieve matters that an inmate reasonably
believes to be too sensitive to pursue internally.  See 28 C.F.R.
§ 542.14(d)(1).

since he was hospitalized and ultimately confined to the SHU
throughout the twenty-day grievance filing period, he was
physically incapable of filing a remedy form in a timely fashion.
The very regulation that establishes the twenty-day grievance
filing period expressly creates an exception for cases in which
the inmate faces a "situation which prevented the inmate from
submitting the request within the established time frame[, . . .
including] an extended period of time during which the inmate was
physically incapable of preparing a Request or Appeal."  28
C.F.R. § 542.14(b).  As the Court of Appeals for the Seventh
Circuit observed under comparable circumstances, "although an
inmate must _normally_ submit a formal grievance within twenty days
of the complained-of events, there is a _hardship exception_ for
inmates who are able to demonstrate a valid reason for not
meeting the deadline," meaning that an inmate who, with good
cause, fails to file a timely grievance form must still seek to
exhaust the administrative process pursuant to § 542.14(b) before
filing suit.  _McCoy v. Gilbert_, 270 F.3d 503, 510 (7th Cir. 2001)
(emphasis in original); _see_ _also_ _Porter_, 534 U.S. at 524 (noting
that "exhaustion in cases covered by § 1997e(a) is now mandatory.
All 'available' remedies must now be exhausted").  Section
542.14(b)'s hardship exception afforded Plaintiff an "available"
remedy that he was required to attempt to exhaust before filing
the Complaint herein.

Because Plaintiff's failure to exhaust administrative remedies is evident on the face of his Complaint, the Court finds that Plaintiff has not complied with section 1997e(a)'s pre-suit exhaustion requirements, and will thus grant Defendants' motion to dismiss.  The order of dismissal herein is without prejudice to Plaintiff's right to file a new complaint upon his exhaustion of available administrative remedies.

### C.   Plaintiff's Motions

As the Court noted, <u>supra</u>, in addition to filing submissions in opposition to Defendants' motion to dismiss, Plaintiff has filed a series of motions, including a "motion for this Court's direction to the Defendant to provide the Plaintiff with meaningful court access" [Docket Item 11] and a motion for the appointment of a special master [Docket Item 13], which appear to raise new claims not asserted in the Complaint.  While "grants for leave to amend complaints should be routinely granted to plaintiffs, even after judgments of dismissal have been entered against them, if the appropriate standard for leave to amend under Fed. R. Civ. P. 15(a) is satisfied," <u>Newark Branch,</u> <u>N.A.A.C.P. v. Town of Harrison, N.J.</u>, 907 F.2d 1408, 1417 (3d Cir. 1990) (citations omitted), Plaintiff has not filed a motion seeking leave to amend his Complaint, and has not submitted "a copy of the proposed . . . amendments," as Local Civil Rule

12

7.1(f) requires of all "Motions Regarding Additional Pleadings." L. Civ. R. 7.1(f).

Moreover, Plaintiff has not contested Defendants' argument that he made no effort to grieve the new claims he seeks to assert, which would subject such claims to dismissal on the grounds the Court explained, <u>supra</u>, in dismissing the claims Plaintiff <u>did</u> include in his original pleading.  Thus, even if the Court were to construe Plaintiff's motions as requests for leave to file an amended complaint, the amended complaint would be subject to dismissal for failure to exhaust, making such amendment an exercise in futility.  <u>See</u> <u>In re Burlington Coat Factory Securities Litigation</u>, 114 F.3d 1410, 1434 (3d Cir. 1997) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.").

Having dismissed all claims asserted in the Complaint, the Court will accordingly dismiss as moot Plaintiff's motions purporting to assert new, unexhausted claims.  As with the claims dismissed above, Plaintiff may file a new complaint asserting these claims upon his exhaustion of available administrative remedies.

## III. CONCLUSION

For the reasons explained above, the Court will grant

Defendants' motion to dismiss, and will dismiss as moot

Plaintiff's motions.  The accompanying Order will be entered.


**November 25, 2008**                  **s/ Jerome B. Simandle**
Date                                   JEROME B. SIMANDLE
                                       United States District Judge

14